UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Bernard S. Black and Samuel H. Black, | ) |
| Plaintiffs, | ) Case No. 16-cv-1763 |
| v. | ) |
| Joanne Black, | ) |
| Defendant. | ) |

**DEFENDANT JOANNE BLACK'S**
**MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS**

"Essentially, Mr. Black requests [this] Court to allow him to spend funds that he misappropriated from Joanne Black on his attorney fees and costs to maintain the litigation he initiates against her and against his cousins." (02.25.16 Order of the Colorado State Court, *In re Application of Bernard Black*, p. 3). Plaintiffs' Complaint should be dismissed with prejudice for this and any one of the following reasons: this Court lacks subject matter jurisdiction pursuant to the Probate Exception; this Court lacks subject matter pursuant to the *Rooker-Feldman* doctrine; the Court should decline to exercise jurisdiction under the *Wilton-Brillhart* abstention doctrine; and this Court lacks personal jurisdiction over Defendant, Joanne Black.

**INTRODUCTION**

Renata Black ("Renata") had two children, Plaintiff, Bernard S. Black ("Bernard") and Defendant, Joanne Black ("Joanne"). (Dkt. 1, Complaint for Declaratory Relief ("Cmpl."), ¶¶ 2, 4). Bernard Black is the father of Plaintiff, Samuel Black ("Samuel"). *Id.* at ¶ 3. Joanne is currently a citizen of the State of New York. *Id.* at ¶ 4.

On December 19, 1997, Renata set up a Supplemental Needs Trust ("SNT") for Joanne's benefit. (09.28.15 District Court, Denver County, Colorado ("DPC") Order, p. 2.[1] (A certified copy of the 09.28.15 DPC Order is attached as Exhibit B.)). Upon Renata's death, Bernard

---

[1] These records and judicial proceedings of the Colorado and New York state courts should be afforded full faith and credit, pursuant to 28 U.S.C. § 1738.

became co-trustee of Joanne's SNT. *Id.* On the same day, Renata set up the "Issue Trust" to benefit Bernard and his children. *Id.*; Cmpl., ¶ 8. Also before her death, Renata established accounts at Vanguard and Fidelity and Roth IRA[2] accounts which, upon Renata's death, were payable on death ("POD") to Joanne. *Id.* at pp. 8-9, 12-13, ¶ 2.

Renata died in New York on May 1, 2012. *Id.* at 2. Bernard was appointed Executor of Renata's estate by the Surrogate's Court of the State of New York, County of Westchester ("NY Probate Court"), *Probate Proceeding, Will of Renata Black*, Case No. 2012-1209.

At the time Renata died, Joanne was living in Colorado. *Id.* On October 16, 2012, Bernard initiated a suit in the State of Colorado petitioning for appointment as Joanne's conservator, the equivalent to a guardian of Joanne's property, *In re Application of Bernard Black*, Case No. 2012 PR 1772. As grounds for his appointment, Bernard asserted Joanne was schizophrenic and homeless in Denver; Joanne had inherited $3 million from Renata; Renata's Will directed 2/3 of her residuary estate to be placed into the SNT for Joanne's benefit; Renata changed the POD beneficiary designations; and, as a result, the POD assets would pass outright to Joanne, rather than passing into the SNT. *Id.* Bernard's petition for appointment gave the DPC "a clear indication of intent to transfer ***all* POD assets** into the SNT." *Id.* at p. 6 (emphasis added). Bernard filed copies of Renata's Will, the SNT, and Issue Trust.

On December 11, 2012, the DPC held an appointment hearing. Bernard advised the DPC that the purpose of the conservatorship was to make sure the $3 million from Renata went to Joanne by way of the SNT, for which her cousin (Anthony Dain) was trustee. *Id.* The DPC understood Bernard intended to disclaim all assets POD to Joanne and move all into the SNT for Joanne's sole benefit. *Id.* The DPC granted Bernard's petition and appointed him conservator.

---

[2] (Ex. B, 09.28.15 DPC Order, p. 8) ("[I]t was revealed at trial that Mr. Black failed to disclose the existence of a Roth IRA account also left to [Joanne] at any time prior to his appointment or on the Inventory filed with the Court. The existence of the Roth IRA was revealed by the forensic accounting performed by Pamela Kerr.").

Bernard submitted a number of proposed orders to the DPC. The DPC signed an initial order directing Joanne's assets be put into the SNT for Joanne. *Id.* at 7. The DPC deliberately did not sign a second proposed order from Bernard, because it contained language referring to Renata's Will directing 2/3 of her estate would be contributed to the SNT for Joanne's benefit and did not comport with the DPC's understanding that, once Bernard disclaimed the funds, all funds would be put into the SNT. *Id.* Bernard failed to disclose he intended to divert 1/3 of Joanne's POD assets into the Issue Trust for himself and his children. *Id.* at p. 8. Later, Bernard submitted another proposed order giving him authority as conservator to disclaim the POD funds and directing Joanne's assets be put into the SNT for Joanne's benefit. Finding that order reflected the DPC's understanding that all of Joanne's assets subject to the disclaimer would be put into the SNT "without division or diminution," the DPC signed the order. *Id.* at p. 7.

Upon obtaining control of Joanne's property from the DPC, Bernard disclaimed Joanne's rights to the POD assets; transferred Joanne's POD assets to Renata's NY Probate Court estate; and – unbeknownst to the DPC, at the time – caused 1/3 of Joanne's POD assets (approximately $1.5 million) to be conveyed to the Issue Trust for himself and his children. *Id.* at pp. 4, 6-7.

Though Bernard was ordered and statutorily required to file within 90 days of his appointment an Inventory declaring all assets held by Joanne on the date of his appointment, he waited until *after* he disclaimed Joanne's POD funds and divested her of 1/3 of the assets through the Issue Trust. *Id.* at pp. 9-10. When Bernard finally filed the Inventory four months late, he falsely identified the value of Joanne's assets existing on the date of his appointment as only $2,230,996, that is, the amount of Joanne's assets after Bernard used his appointment to divert 1/3 of Joanne's assets to himself and his children via the Issue Trust. *Id.* at p. 3.

In September 2014, Bernard petitioned the DPC for appointment as Joanne's guardian. *Id.* at p. 4. On October 8, 2014, the Guardian *ad litem* appointed by the DPC opposed Bernard's guardianship petition, asserting Bernard engaged in misconduct relating to Joanne's funds. *Id.*

On October 9, 2014, Bernard initiated a matter in the State of New York in which he petitioned the Supreme Court of the State of New York, County of Richmond, ("SCNY") for appointment as guardian of Joanne's person and property, *In the Interest of Joanne Black, Protected Person*, Index No. 80253-14. Joanne was then living in New York. *Id.*

On April 2, 2015, after Joanne and others alleged Bernard had engaged in misconduct concerning Joanne's POD assets, the DPC suspended Bernard's authority as conservator over Joanne's property. (04.02.15 DPC Order, ¶¶ 1, 3 (A certified copy of the 04.02.15 DPC Order is attached as Exhibit A.)). The DPC froze assets belonging to Joanne. *Id*. at ¶ 6. The DPC held in abeyance its ruling on Bernard's request to use Joanne's funds to pay his attorney fees for defending his actions as conservator, finding "an evidentiary hearing is required to resolve what the Court has identified as the fundamental issues in this matter: whether the disclaimer obtained by Mr. Black as to the accounts at Fidelity and Vanguard POD to Joanne Black should have acted to divest Ms. Black of 1/3 of these non-probate assets." *Id.* at ¶¶ 10, 13.

On September 28, 2015, following 4 days of testimony attended by Bernard, submission of other evidence, authority, and argument, the DPC found Bernard "did not properly disclose to [the DPC] that he intended to use the disclaimer to redirect one-third of the non-probate assets to persons other than [Joanne] and as a result of his failure to disclose, [Bernard] did not have authority to redirect the assets." (Ex. B, 09.28.15 DPC Order, p. 5); *See also, id.* at p. 11 ("[Bernard] is not entitled to rely on his receipt of the funds, as he obtained them by deception…"). With respect to the Issue Trust, the DPC found Bernard "failed to disclose to the

4

Court … that he intended to divert one-third of the POD assets into the Issue Trust which benefitted himself and his children" (*id.* at p. 8); "knew the result of his actions would be that one-third of Joanne Black's POD funds would be diverted to himself and his children through the vehicle of the Issue Trust" (*id.* at p. 10); "disclaimed the POD funds on [Joanne's] behalf and redirected one-third of her assets into the Issue Trust" (*id.* at p. 6); and "knowingly used Joanne Black's POD account funds to fund the Issue Trust set up under Renata Black's estate plan and it is clear from his own testimony that he intended to and still intends to permanently deprive her of those funds" (*id.* at p. 10).

The DPC held Bernard breached his fiduciary duties owed to Joanne; removed Bernard as conservator; surcharged Bernard; revoked Bernard's Letters; recommended Bernard not be appointed as fiduciary in any capacity to Joanne and that he be removed as Executor for Renata's probate estate; found Bernard liable for civil theft from Joanne; trebled the full amount of disclaimed funds payable on Renata's death to Joanne; found Bernard violated the April 2, 2015 DPC order directing estate funds not be used to pay his attorney or other fees; and entered judgment for the trebled amount ($4,534,068.00[3]) in favor of Joanne and against Bernard. (Ex. B, 09.28.15 DPC Order, pp. 5-6, 12-15). The DPC retained jurisdiction over the action as necessary, pending the proceeding pending in New York and until the judgments are paid in full. *Id.* at p. 14, ¶ 10.

On January 13, 2016, upon Affirmation by counsel for Joanne's cousin, Cherie Wrigley, the SCNY entered against Bernard an Order to Show Cause with Temporary Restraining Order. (01.13.16 SCNY Order (A certified copy of the 01.13.16 Order is attached as Exhibit C.)).

---

[3] Ruling upon Bernard's post-trial motion for a reduced damages award, the DPC issued an amended award to Joanne $4,305,819.69, plus $115,000 Bernard took out of Joanne's SNT and Renata's estate to pay for his attorneys' fees. (03.17.16 DPC Order, pp. 9 at ¶5, 10 at ¶7 (A certified copy of the 03.17.16 Order is attached as Exhibit E.)).

Concerning jurisdiction[4], the SCNY found Bernard "unilaterally reappeared" in the November 12, 2015 SCNY proceeding by written letter of his attorney objecting to the procedure and substance of the proposed Order and retained new counsel in New York, who filed an appearance in the SCNY on December 22, 2015 (Ex. C, 01.13.16 SCNY Order, p. 3). The SCNY found Joanne's welfare "is imminently threatened by [Bernard], individually and in his fiduciary capacities" and restrained Bernard "from further dominion and control of [Joanne's] assets by way of a Temporary Restraining Order." *Id.* at p. 1; *See also, Id.* at pp. 5-6 (ordering Bernard "individually and in any fiduciary capacity, … restrained from making any distributions from the [Issue Trust]," pending further order of SCNY or NY Probate Court; and "from transferring, selling, assigning, or converting any assets belonging to the Estate of Renata Black, payable on death accounts for the benefit of Joanne Black, which include accounts held at Vanguard and Fidelity, or any trust for which Bernard Black has gained dominion and control, whether by official or unofficial means, that are for the benefit of Joanne Black, pending further order of this Court.").

On January 27, 2016, Plaintiffs filed the instant Complaint against Joanne seeking this Court's declaration that the restraints imposed by the Colorado and New York courts do not, in fact, restrain Plaintiffs. (Cmpl. ¶¶ 16-17, 19, 22, 25-26). Plaintiffs allege Joanne "is not now and never was a beneficiary of the Issue Trust" (*id.* at ¶ 10); and "[t]he entire res of the Issue Trust is maintained in accounts held in Illinois. The Issue Trust is administered in Illinois by [Bernard]" (*id.* ¶ 12); Joanne "does not now and never has had any interest in the Issue Trust.

---

[4] New York Surrogate's Court Procedure Act §210(2)(b) provides: "The receipt and acceptance of any property paid or distributed out of and as part of the administration of an estate subject to the jurisdiction of the court … shall constitute a submission by such recipient to the jurisdiction of the court as to any manner concerning the payment or distribution, including proceedings for the recovery thereof." Under the Constitution of the State of New York, a New York Supreme Court judge may take any action that a Surrogate Court may take. *See, Pollicina v Misericordina Hosp. Med'l Ctr.,* 642 N.E. 2d 974, 977 (N.Y. 1993).

6

The Issue Trust contains no assets of [Joanne]" (*id.* at ¶ 20); Joanne "is not a beneficiary of the Issue Trust" (*id.* at ¶ 23); and "[t]he res of the Issue Trust came from Renata Black and it contains no assets of [Joanne]" (*id.*). Nonetheless, Plaintiffs allege this Court has personal jurisdiction over Joanne under 735 ILCS 5/2-209(a)(10) and (13) because their cause of action arises from Joanne's "purporting to assert control and claim an interest in a trust administered in the State of Illinois." *Id.* ¶ 6. Plaintiffs also allege that, "[t]o the extent that [Joanne] continues to claim that Plaintiffs are restrained from carrying out their obligations as Trustees under the Issue Trust, there is an actual controversy between Plaintiffs and Defendant subject to adjudication under 28 U.S.C. § 2201 regarding Plaintiffs['] right to perform their obligations as Trustees under the Issue Trust without restraint." *Id.* at ¶ 25.

On February 22, 2016, the DPC granted a motion for permission to retain counsel to defend Joanne against Plaintiffs' Complaint before this Court. (02.25.16 DPC Order, p. 6 (A certified copy of the 02.25.16 Order is attached as Exhibit D.)). In its related order, the DPC found Plaintiffs' Complaint "reflects incorrect statements" regarding the DPC's orders: Plaintiffs' Complaint references the DPC's April 2, 2015 Order freezing all of Joanne's assets, but fails to reference the September 28, 2015 DPC Order finding Bernard breached his fiduciary duties, removing Bernard as conservator, and surcharging Bernard for the funds he "misappropriated from Renata Black's accounts and transferred into the Issue Trust he references in the Complaint; a sum of over one million dollars." *Id.* at p. 2. The DPC summarized its September 28, 2015 findings:

> Bernard Black transferred funds from his deceased mother's accounts designated payable on death ("POD") to Joanne Black and his five eldest children to fund the Issue Trust… Mr. Black perpetrated a scheme whereby he obtained an order from this Court to disclaim those POD funds and rather than place the funds into the SNT as he represented his intentions to be, he placed two-thirds of the disclaimed funds into the SNT and one-third into the Issue Trust, all without fully disclosing

7

>his intentions to this court. Mr. Black therefore has no rights to any of the funds contained within the Issue Trust that were transferred or derived from Renata Black's POD accounts and the amount surcharged to him speaks to this. (*Id.* at 3; 09.28.15 citations omitted).

The DPC also found:

>Bernard Black and his current wife both testified before this Court that they are law professors at Northwestern University in Chicago, Illinois. As such, each of these individuals has an enhanced duty for full and complete candor to the Court and to conduct themselves and this matter with dignity becoming judicial officers and professors. The taking of his sister's funds, the multiple suits initiated by Mr. Black against his family members, the inaccuracies in his pleadings before this Court and his apparent refusal to accept the changes his mother made to her estate plan are absolutely appalling and are not in keeping with his status as a law professor. (*Id.* at p. 5).

On March 17, 2016, the DPC ruled on Bernard's post-trial motions. (Ex. E, 3.17.16 DPC Order). The DPC found Bernard's argument that it lacked jurisdiction unavailing. *Id.* at p. 7. The DPC held: "when Bernard Black disclaimed the POD account funds left directly to Joanne Black …, he laundered the funds through Renata Black estate accounts…, dividing the funds into thirds and depositing two-thirds into the SNT and one-third into the issue trust." *Id.*

Now, for the reasons set forth herein, Joanne moves to dismiss Plaintiffs' Complaint in which they ask this Court declare they "are free of restraint" to distribute funds to Bernard and to pay Bernard's financial needs, including paying attorney fees incurred in litigation.

## ARGUMENT

### I. The Probate Exception Precludes This Court's Subject Matter Jurisdiction Over Plaintiffs' Claim.

The property to which Plaintiffs ask the Court to give them unfettered control is already under the jurisdiction of the Colorado and New York state courts. As such, the Probate Exception precludes this Court's subject matter jurisdiction over Plaintiffs' Complaint.

"[W]hen one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall v. Marshall*, 547 U.S. 293, 311 (2006).

Thus, under the Probate/Domestic Relations Exception ("Probate Exception"), federal courts are precluded from disposing of property in the custody of a state probate court. *See, e.g., Elinoff v. UBS Fin'l Svcs., Inc.*, No. 11C1027, 2011 WL 2960730, at *2 (July 20, 2011 N.D. Ill.) (citing *Marshall*) (finding Probate Exception precludes federal court jurisdiction over plaintiff's declaratory action seeking determination of right to POD assets already under control of a state court); *Struck v. Cook Cty. Public Guardian,* 508 F.3d 858, 860 (7th Cir. 2007) (holding Probate Exception precludes federal court jurisdiction over assets of a person for whom a state court had appointed a guardian, because control over such assets is "at the heart of the guardian's responsibilities and are supervised by the court that appointed [the guardian]").

Here, the Colorado and New York courts are exercising *in rem* jurisdiction over the POD assets Bernard caused to be put into the Issue Trust. *See, e.g.*, Ex. E, 03.17.16 DPC Order, p. 7 ("[W]hen Bernard Black disclaimed the POD account funds left directly to Joanne …, he laundered the funds through the Renata Black estate account … dividing the funds into thirds and depositing … one-third into the issue trust"); Ex. C, 01.13.16 SCNY Order, pp. 5-6 (ordering Bernard, "individually and in any fiduciary capacity,… restrained from making any distributions from the [Issue Trust]"). Accordingly, this Court does not have and is precluded from exercising subject matter jurisdiction over Plaintiffs' claim seeking a determination of ownership and declaration from this Court that they are "without restraint" to dispose of the assets of the Issue Trust. *See, e.g., Elinoff*, 2011WL 2960730, at *2-3; *Struck*, 508 F.3d at 860.

Indeed, in response to Bernard's petition for appointment and proposed orders seeking to disclaim Joanne's POD assets, the DPC appointed Bernard conservator of Joanne's assets. *See, e.g.*, Ex. B, 09.28.15 DPC Order, pp. 2-3 (finding Bernard obtained control over Joanne's POD assets by petitioning the DPC for appointment as Joanne's conservator and proposing orders to

9

the DPC ); *id.* at p. 5 (finding Bernard's breach of fiduciary duties as conservator appointed by the DPC is the sole reason all of the POD assets are not in Joanne's SNT). Control over the POD assets is "at the heart" of Bernard's responsibilities as conservator and are supervised by the DPC that appointed Bernard as conservator. *See, e.g., id.* at p. 14, ¶10; *Struck*, 508 F.3d at 860.

In their Complaint, Plaintiffs ask this Court to do exactly what the Probate Exception prohibits: exercise *in rem* jurisdiction over property that is under the *in rem* jurisdiction of other state courts. This Court's exercise of *in rem* jurisdiction over the Issue Trust *res* would interfere with the Colorado and New York courts' exercise of control over the same assets. This Court lacks subject matter jurisdiction and should dismiss Plaintiffs' Complaint with prejudice.

II. **Alternatively, This Court Lacks Subject Matter Jurisdiction Pursuant to the Rooker-Feldman Doctrine.**

United States District Courts lack subject matter jurisdiction to review state court judgments, over which only the United States Supreme Court has federal appellate jurisdiction. *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011); *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008); *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 701-2 (7th Cir. 1998). This is known as the *Rooker-Feldman* doctrine, so named for the two U.S. Supreme Court decisions upon which it is based. *See, Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) ("This circuit has consistently emphasized that 'taken together, *Rooker* and *Feldman* stand for the proposition that "lower federal courts lack jurisdiction to engage in appellate review of state court determinations."'"); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) (holding, even if a state court decision was wrong, only the Supreme Court has the power to reverse or modify the judgment, since the jurisdiction of federal district courts is strictly original); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding only the United States Supreme Court has the power to review final judgments of state courts).

Here, Plaintiffs seek relief from the effect of a judgment issued by a Colorado state court and an interlocutory injunction order issued in a New York state court. Although presented as a claim for a judgment declaring the trustees are "free from restraint" to carry out their trust duties, it is the judgment of the Colorado state court and the interlocutory injunction in the New York state court which impose the restraints from which Plaintiffs seek this Court's declaration that they are free. (Cmpl. ¶ 16 ("In the NY Guardian Action, on January 13, 2016, the NY Court … entered an Order which stated BBlack, individually and in any fiduciary capacity, is restrained from making distributions from the Issue Trust."); ¶ 17 (describing "'judicial restraints' based on the January 13th Order in the NY Guardian Action"); ¶ 19 ("In April 2015, the Denver Court held a status conference in the Denver Conservator Action. After the conference, the court entered an order stating that 'all … assets related to [Defendant] are frozen."); ¶ 22 ("Defendant believes that Plaintiffs are restrained from exercising their obligations as Trustees of the Issue Trust based on the January 13th Order entered in the NY Guardian Action and the April 2015 Order entered by the Denver Court in the Denver Conservator Action."); and ¶ 25 ("To the extent that Defendant continues to claim that Plaintiffs are restrained from carrying out their obligations as Trustees under the Issue Trust, there is an actual controversy between Plaintiffs and Defendant subject to adjudication under 28 U.S.C. § 2201…")).

The *Rooker-Feldman* doctrine deprives federal courts of subject matter jurisdiction in cases where a party who is dissatisfied with the result in state court, sues in federal court requesting a remedy for an injury caused by the state court judgment. *Johnson*, 551 F.3d at 568. The first inquiry in applying the doctrine is whether the federal plaintiff seeks to set aside a state court judgment, or whether his claim is independent of the state court judgments. *Crawford*, 647

11

F.3d at 646. If the plaintiff's claimed injury "resulted from, or is inextricably intertwined with, a state court judgment, then lower federal courts cannot hear the claim. *Johnson*, 551 F.3d at 568.

In the instant case, Plaintiffs allege in their Complaint that Defendant "believes that plaintiffs are restrained" regarding the trust based on a January 13, 2016 order from New York and an April 2015 order from Colorado. (Cmpl. ¶ 22). Plaintiffs proceed to urge this Court that neither the Colorado court nor the New York court had jurisdiction over them or the subject trust. *Id.* at ¶ 23. Plaintiffs then request declaratory judgment from this Court which would construe these Colorado and New York state court orders, so as to relieve Plaintiffs from the assertion that the orders are binding on them. (Cmpl. ¶¶ 22-26)

Among other things, Plaintiffs' Complaint is misleading in that it references the Colorado state court's April 2015 Order freezing all assets related to Joanne, but fails to reference that court's September 28, 2015 Order. (Ex. D, 02.25.16 DPC Order, p. 2). In its September 28, 2015 Order, the DPC held Bernard had breached his fiduciary duties as conservator for Joanne; was removed as her conservator; and was surcharged the funds he misappropriated from Renata's accounts and transferred into the Issue Trust to which Plaintiffs refer in the Complaint, that is, "a sum of over one million dollars." *Id.*

The *Rooker-Feldman* doctrine is applicable only in cases where the state court proceedings have ended and the plaintiff alleges that his/her injury is caused by the state court judgment. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 590-91 (7th Cir. 2005). Further, *Rooker-Feldman* is distinct from and "not coextensive" with claim preclusion (res judicata), because in a *Rooker-Feldman* situation the district court lacks subject matter jurisdiction and the question of claim preclusion is not even reached. *Garry*, 82 F.3d at 1365. As such, it does not matter if the state court judgment might be erroneous or even unconstitutional, nor is it of any

consequence for the plaintiffs to claim that the state court judgement was entered without personal jurisdiction over the plaintiffs. *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510-11 (7th Cir. 1996). Thus, even though Plaintiffs maintain the Colorado state court lacked jurisdiction over them in their individual capacities or in their trustee capacities, (Cmpl., ¶ 21), nonetheless, they are seeking a remedy for alleged injury from a state court judgment. As such, under controlling authority from the Seventh Circuit and the Supreme Court of the United States, this District Court lacks subject matter jurisdiction to hear Plaintiffs' claims.

**III.   This Court Should Decline to Exercise its Discretionary Jurisdiction to Entertain a Declaratory Judgment Action.**

The Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.* provides that district courts "may declare the rights and other legal relations of any interested parties seeking such declaration." 28 U.S.C. § 2201(a)(2015) (emphasis added). The Supreme Court has held that "district courts have substantial discretion in deciding whether to declare the rights of litigants and may, in the sound exercise of their discretion, stay or dismiss an action seeking declaratory judgment in favor of an ongoing state court case." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 985-86 (7th Cir. 2010) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942)). While there are no set criteria for when a court should exercise its discretion to abstain, the "classic example" is where solely declaratory relief is sought and parallel state court proceedings are ongoing. *Envision*, 604 F.3d at 986; *See also, R.R. St. & Co., Inc. v. Vulcan Mat'ls Co.*, 569 F.3d 711, 715 (7th Cir. 2009) ("There is no doubt that a court may dismiss or stay an action under the *Wilton-Brillhart* abstention doctrine where solely declaratory relief is sought.") (citations omitted).

As the Supreme Court has made clear, the *Wilton-Brillhart* abstention doctrine applies in a diversity case where a declaratory judgment is sought and a parallel state proceeding also

13

exists. *Envision*, 604 F.3d at 986 (citations omitted). Two actions are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in two fora. *Id.;* *See also, Steadfast Ins. Co. v. Ballantine*, No. 12 C 2646, 2012 WL 5304207, at *5 (N.D. Ill. Oct. 25, 2012) (staying declaration judgment claim due to ongoing parallel state litigation).

In the instant case, it is readily apparent that parallel actions are pending <u>both</u> in Colorado and in New York state courts. Indeed, Plaintiffs' sole cause of action before this Court is a request for declaratory relief pursuant to § 2201 arising out of the restraints imposed by the orders of the Colorado and New York state courts. (Cmpl. ¶¶ 16-17, 19, 22, 25-26). To avoid the multiplicity of actions, this Court should dismiss or stay the instant action pursuant to *Wilton-Brillhart* abstention doctrine.[5] The purpose of the declaratory judgment act is to facilitate efficient outcomes. *Medical Assurance*, 610 F.3d at 381. This multiplicity of litigation is in no way efficient, and in the exercise of this Court's discretion the instant litigation should be dismissed or stayed.

### IV. This Court Does Not Have Personal Jurisdiction Over Joanne.

The Court lacks personal jurisdiction over Joanne because the assets giving rise to Plaintiffs' Claim were not in Illinois when Joanne acquired ownership and Joanne does not have an interest in the Issue Trust. In their Complaint, Plaintiffs allege this Court has personal jurisdiction over Joanne pursuant to §2-209(a)(10) and (13). Neither section gives this Court personal jurisdiction over Joanne. First, §2-209(a)(13) does not apply because Plaintiffs allege "Defendant does not now and never has had any interest in the Issue Trust." (Cmpl. ¶ 20). Likewise, §2-209(a)(10) does not apply because the assets giving rise to this cause of action were not in Illinois when Joanne acquired ownership. *Poplar Grove State Bank v. Powers,* 578 N.E.

---

[5] The opinion *Medical Assurance Co., Inc. v. Hellman*, 610 F.3d 371, 378 (7th Cir. 2010), suggests that the term "abstention" may be a misnomer here, as abstention normally refers to a group of judicially-created doctrines, whereas *Wilton-Brillhart* depends on the Declaratory Judgment Act for its authority.

14

2d 588, 596 (2d Dist. 1991) ("[T]he the plain meaning of section 2–209(a)(10) is that, for purposes of *in personam* jurisdiction, the asset or thing of value involved must have been present in the State when the defendant acquired his "ownership, possession or control" of it."). Plaintiffs allege the Orders of the DPC and SCNY courts restraining disposal of the assets create "an actual controversy" entitling Plaintiffs to a declaration from this Court that they may spend the assets "without restraint." (Cmpl. ¶¶ 16, 19, 22-23, 25-26). Those DPC and SCNY Orders concern assets belonging to Joanne which were, upon Renata's death, payable to Joanne; misappropriated by Bernard; laundered by Bernard through Renata's New York estate; and put in the Issue Trust by Bernard. *See, e.g.,* Ex. B, 09.28.15 DPC Order, p. 5; Ex. E, 3.17.16 DPC Order, p. 7; Ex. C, 01.13.16 SCNY Order, pp. 4-6. When Renata died, Joanne was in Colorado; Joanne is now in New York. The only reason Joanne's assets are now in Illinois is because Bernard failed to fully disclose to the Colorado and New York courts, breached his fiduciary duties, stole Joanne's assets, and put them into the Issue Trust. *Id.* Thus, this Court does not have personal jurisdiction over Joanne.

## CONCLUSION

WHEREFORE, Defendant Joanne Black, respectfully requests this Honorable Court dismiss with prejudice Plaintiffs' Complaint, and award her further relief as is fair and just.

| | |
|---|---|
| Robert A. Carson<br>Stephanie A. Petersmarck<br>Gould & Ratner LLP<br>222 N. LaSalle Street, 8th Fl.<br>Chicago, IL  60601<br>(312) 236-3003<br>rcarson@gouldratner.com<br>spetersmarck@gouldratner.com | Respectfully submitted,<br>JOANNE BLACK, Defendant<br><br>By: /s/ Robert A. Carson<br>     One of her attorneys |

15

**CERTIFICATE OF SERVICE**

I, Robert A. Carson, an attorney, hereby certify that on April 1, 2016, I electronically filed <u>DEFENDANT JOANNE BLACK'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS</u> with the Clerk of the Court using the Court's electronic filing system which will send notification of such filing to the following:

Paula K. Jacobi
Paul Olszowka
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: 312-357-1313

*Attorneys for Bernard and Samuel Black*

By: <u>s/ Robert A. Carson</u>