# EXHIBIT B

| District Court, Denver County, Colorado<br>Court Address:<br>1437 Bannock Street, Denver, Colorado 80202 | DATE FILED: September 28, 2015 12:14 PM |
|---|---|
| In re the Interest of:<br><br>**JOANNE BLACK,**<br>**Protected Person.** | |
| | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address)<br><br>Phone Number:                Email:<br>FAX Number:                  Atty. Reg. #: | Case Number:<br>12 PR 1772<br><br>Courtroom 224 |
| **HEARING ORDER** | |

THIS MATTER came before the Court for hearing June 16-17, 2015, August 5, 2015 and September 8, 2015. Present were Bernard Black represented by Counsel Bernard Poskus and Patrick Thiessen; Lisa DiPonio, Court Appointed Counsel ("CAC") for the Protected Person ("PP"); Gayle Young, Guardian *ad Litem* ("GAL") for the PP; Anthony Dain, Esq.; Cherie Wrigley; Nancy Peterson, Esq., Special Conservator. The PP appeared by telephone for portions of the hearings and her New York Counsel Ira Saltzman appeared by telephone for all of the proceedings. The Court heard testimony, statements and argument of Counsel, reviewed exhibits entered into evidence, the record and relevant authority. The Court takes judicial notice of the filings in its case file.

The Court finds the Conservator, Bernard Black, has breached his fiduciary duties as to the Protected Person, his sister, is removed as Conservator, and is surcharged. The Court revokes Mr. Black's Letters and recommends he not be appointed as a fiduciary in any capacity as to Joanne Black, be it guardian of her person or of her property and that he be removed as Executor for his mother, Renata Black's, probate estate.

*Case Background*

Bernard Black is an attorney, admitted to practice in 1982 and is employed since 2010 as a professor of law, marketing and finance at Northwestern University in Chicago. Mr. Black testified he was educated at Stanford and Columbia Universities. Anthony Dain is an attorney who has practiced for 34 years in patents and banking in the State of California. Cherie Wrigley is a retired high school resource specialist who worked with special needs children and children with behavioral problems. Ms. Wrigley testified she holds two masters degrees and currently works with the mentally ill at a homeless shelter. Ms. Wrigley also worked as a CASA volunteer for two years. The Court finds these parties are highly educated and understand the role of a fiduciary. Interested persons

1

Anthony Dain and Cherie Wrigley are brother and sister, and are first cousins to Bernard and Joanne Black on each of their mother's side of the family. The Court understands that Ms. Wrigley and Bernard Black both have filed competing petitions for appointment as guardian with the Court in New York State where Joanne Black resides.

Bernard Black petitioned the Denver Probate Court ("DPC") on October 16, 2012 for appointment as his sister's conservator, the equivalent to a guardian of the property. As grounds for the appointment, Mr. Black asserted his sister suffered from schizophrenia, was in a psychotic state and homeless in Denver, Colorado and that she had recently inherited three million dollars ($3,000,000) from their mother, Renata Black. Specifically, Mr. Black advised the Court through his petition that Renata Black's Will had directed two-thirds (2/3) of her residuary estate to be placed into a Supplemental Needs Trust ("SNT") for Joanne Black's benefit; that Renata Black had changed the beneficiary designations on certain assets and as a result, those assets passed outright to Joanne Black rather than passing into the Supplemental Needs Trust. Mr. Black filed copies of Renata Black's Will, the SNT and Issue Trust with this Court. Mr. Black filed an amended petition for appointment as both permanent and special conservator on November 19, 2012 alleging the same grounds as the original petition. Both petitions describe Joanne Black's inheritance in Paragraph 15.a. as being in the sum of $3,000,000.00.

The fact of Joanne Black's long-standing mental illness is not disputed; nor is her inability to manage her financial affairs. The Court appointed Counsel and a GAL to both represent Joanne Black and to ensure her best interests were protected in these proceedings.

The evidence adduced at trial shows Renata Black set up a SNT for Joanne Black's benefit on December 19, 1997. The SNT named Renata Black and Anthony Dain as co-trustees, with Bernard Black to serve as a successor co-trustee in the event Renata Black was unable to serve. Also on December 19, 1997, Renata Black set up what is referred to as the "Issue Trust" to benefit Bernard Black and his children. Co-trustees for the Issue Trust are Renata Black, Bernard Black and Anthony Dain. Renata Black died on May 1, 2012 and Mr. Black was appointed as the Executor of her estate by the Surrogate's Court in New York State effective June 21, 2012.

Although not specifically pled in any petition or separate motion, Mr. Black's initial proposed order filed with the Court on November 13, 2012 stated that upon appointment as conservator he intended to disclaim Joanne Black's interest as beneficiary under all payable on death or transferable on death accounts ("POD" or "TOD") into Renata Black's estate "…allowing Respondent's share to pass under Article Fourth of the Last Will and Testament of Renata Black…under which two thirds of the estate of Renata Black will be contributed to a Supplemental Needs Trust for the Benefit of Joanne Black." Hearing for Mr.

2

Black's appointment was held on December 11, 2012 and he was duly appointed as conservator for Joanne Black with unlimited authority. That same day the Court signed the order of appointment which stated at Paragraph 6 that as conservator, Mr. Black would place Joanne Black's assets into a Supplemental Needs Trust for Respondent's benefit. This order, dated December 11, 2012 directed the conservator to file the Inventory and Financial Plan with the Court by March 11, 2013 and to report Joanne Black's assets as they existed on the date of his appointment. Subsequent to his appointment, through Counsel, Mr. Black filed amended and second amended orders of appointment with the Court.

The amended order filed on January 29, 2013 included verbiage in Paragraph 6 that Respondent's assets "will be placed into a Supplemental Needs Trust for Respondent's benefit". Paragraph 9 specified that as conservator Mr. Black would have authority to disclaim Respondent's interest in POD or TOD accounts with Vanguard and Fidelity, with Joanne Black's share to pass under Renata Black's Will where two thirds of the estate was to be contributed to the SNT to benefit Joanne Black.

The second amended order filed on February 13, 2013 also stated at Paragraph 6 that Respondent's assets "will be placed into a Supplemental Needs Trust for Respondent's benefit". Paragraph 9 of the February 13, 2013 order states that as conservator Mr. Black would disclaim Joanne Black's interest as beneficiary under all POD or TOD accounts with Vanguard and Fidelity.

Another second amended order was filed with the Court on March 2, 2013. This order also contains verbiage which states at Paragraph 6 that Respondent's assets "will be placed into a Supplemental Needs Trust for Respondent's benefit". Paragraph 9 of the March 2, 2103 proposed order appears identical to verbiage contained in the second amended order filed February 13, 2013.

The Court signed an Amended Order filed on March 5, 2013. This order again requires the conservator to file an inventory and financial plan on March 11, 2013 to report Joanne Black's assets existing on the date of appointment, and directed the conservator at Paragraph 6 to place Respondent's assets "into a Supplemental Needs Trust for Respondent's benefit." Paragraph 9.a. authorizes the conservator to disclaim Respondent's interest as beneficiary under all POD or TOD accounts with Vanguard and Fidelity owned by Respondent's mother, Renata Black.

Mr. Black did not file the Inventory and Financial Plan with the Court until July 1, 2013. The Inventory listed the sum of $2,230,996.00 as the value of the PP's assets existing on the date of appointment, December 11, 2012. The court approved the Inventory and Financial Plan on July 16, 2013.

In 2014, Mr. Black failed to timely file the annual conservator's report which was due on March 11, 2014. As a result, his Letters were suspended and he was

ordered to appear before the Court to show cause why his letters should not be revoked. Mr. Black then filed the annual report on June 23, 2014. The Court review process noted increased expenditures which were not approved on the financial plan and as a result, Mr. Black filed an amended annual report on September 8, 2014 with explanations for the increased expenditures. Mr. Dain filed an objection to the amended annual report on September 19, 2014. Mr. Dain's objection was primarily aimed at venue, noting the PP had by that time been a resident of New York State and he objected to Mr. Black's petition for guardianship, also filed during this time frame in the DPC. As pertinent to the issues before the Court at present, Mr. Dain asserted that Mr. Black had not responded to requests for an accounting of the SNT, had ignored questions regarding administration of the SNT and had inappropriately denied or restricted distributions from the SNT. The GAL filed a Supplemental Report on October 8, 2014 which recommended this Court deny the guardianship petition and stated she had concerns "...about Mr. Black's management of Joanne Black's financial affairs." The concerns raised by the GAL at this time were that Mr. Black had requested authorization to withhold the amended conservator's report from the PP and that he failed to respond to the Court's Order dated July 2, 2014 regarding significantly higher expenses on the financial plan.

As a result of the GAL's report with recommendations and the objections filed, the Court entered an Order on October 27, 2014 which denied the guardianship petition and ordered Mr. Black to show cause why the conservatorship should not also be dismissed and an accounting ordered. Mr. Black's response to the Court's order essentially outlined the New York State proceedings for guardianship of Joanne Black's person and property and requested the Colorado conservatorship remain in place until the fiduciary was appointed in New York State. Mr. Black also asserted that the GAL should not have addressed the continued need for a conservatorship in her report without first speaking with him. Mr. Dain filed a reply to Mr. Black's response and again asserted Mr. Black had not accounted to him in his position as co-trustee for the SNT and had not provided copies of the bank account statements despite requests for them. Mr. Black then filed a further response along with copies of bank statements and accountings.

After Mr. Black's further response was filed with the Court, Mr. Dain filed an objection which noted for the first time that Mr. Black was to "marshal and manage $3.5 million in assets held in brokerage accounts solely for the Protected person." Mr. Dain asserted that Mr. Black had failed to fully account and breached his duties by transferring the assets to a probate estate where he divided the assets one third to a trust for his children and two thirds to two trusts for the protected person without accounting to the Court for what has now been identified as the Issue Trust. Mr. Dain requested a forensic accounting be undertaken. Cherie Wrigley also filed an objection which asserted, *inter alia*, that Mr. Black had not accounted for all of the funds in the POD accounts the PP inherited from Renata Black.

4

pg 4 of 15

Coinciding with the objections and information that had been filed with the Court, the GAL filed a Motion for Independent Forensic Review of Financial Records. CAC filed a Motion to Void the Conservator's Disclaimers, to Deposit the Vanguard and Fidelity Assets in Trust with the Court and Request for a Status Conference. In a Supplemental Objection filed with the Court on March 25, 2015, Mr. Dain advised this Court that Mr. Black had, during adversary proceedings in New York, admitted that he had transferred approximately $1 million of the PP's assets into the Issue Trust. The GAL joined in Mr. Dain's concerns and objections through a report she filed with the Court on March 30, 2015. This Court held the Status Conference requested by CAC on April 2, 2015.

The parties stipulated to a forensic accounting. The Court suspended Mr. Black's authority to act as conservator and appointed a Special Conservator to act in the interim until a permanent conservator or guardian of the property was appointed by the Court in New York. This Court also entered an order to freeze Joanne Black's assets and all accounts in the conservatorship, pending final resolution. Mr. Black's request for release of trust and conservatorship funds to pay attorney fees and costs to defend this action was held in abeyance pending further proceedings. The Court then scheduled an evidentiary hearing and framed the hearing issues as:

    a) whether the disclaimer obtained by Mr. Black as to the accounts at Fidelity and Vanguard POD to Joanne Black should have acted to divest Ms. Black of 1/3 of these non-probate assets; and

    b) whether it was properly disclosed that Mr. Black intended or had authority to redirect one-third of the non-probate assets to persons other than Ms. Black.

Also before the Court are two other matters. Mr. Dain filed a Motion for Issuance of a Contempt Citation alleging that Mr. Black violated the Court's order freezing assets and used estate funds to pay his attorney fees in Colorado and New York and expert accounting witness. CAC filed a motion requesting the Court to consider civil theft based on findings reflected in the forensic accounting report. The forensic accounting reported that Mr. Black had failed to report all of Ms. Black's assets as of the date of his appointment and instead only reported her assets as listed after he used the order to disclaim the POD accounts.

The Court finds, after evidentiary hearing that Mr. Black did not properly disclose to this Court that he intended to use the disclaimer to redirect one-third of the non-probate assets to persons other than Ms. Black and as a result of his failure to disclose, did not have authority to redirect the assets. The Court finds the disclaimer was obtained without providing full disclosure and therefore should not have divested Ms. Black of one-third of the POD assets left to her. The Court finds Mr. Black's actions constitute a breach of his fiduciary duty as conservator

5

and that the appropriate remedy is surcharge. The Court finds Mr. Black did violate the Court's order directing that estate funds not be used to pay attorney and other fees pending final hearing but also finds that Mr. Black did return the majority of funds he paid to his attorneys in violation of this Court's order, which funds were held in counsel's trust account. The Court finds Mr. Black's actions do meet all of the elements of civil theft and that as a sanction he should be assessed treble damages and pay for the costs of the action and reasonable attorney fees. Finally, the Court finds Mr. Black did not report Joanne Black's assets as they existed on the date of his appointment, December 11, 2012 but instead reported her assets as they existed *after* he disclaimed the POD funds on her behalf and redirected one-third of her assets into the Issue Trust.

*Disclaimer*

As noted above, Mr. Black never specifically requested through petition or separate motion permission to disclaim assets. The only references to the disclaimer were made through verbiage inserted into the proposed orders of appointment. The petition stated that Renata Black had changed the beneficiary designations on certain assets and as a result, those assets passed outright to Joanne Black rather than passing into the Supplemental Needs Trust. Regardless of verbiage referencing the manner in which Renata Black's residuary estate was to be divided, the language regarding the POD designations states the assets passed outright to Joanne Black rather than passing into the SNT which is a clear indication of intent to transfer all POD assets into the SNT.

During the appointment hearing held on December 11, 2012, Mr. Black advised the Court that the basic purpose of the conservatorship would be to make sure Joanne Black had money from her mother put into a trust and that their cousin, Mr. Dain, would then be the trustee of the trust. (Hearing transcript, page 6, lines 23-25, page 7, lines 1-3). The only other reference to the PP's funds during the appointment hearing was made by the court where the court stated on page 17, lines 11-13 that "the process of moving the funds into the trust can be reported on...", referring to the conservator's obligation to file an inventory and financial plan within ninety days of appointment, reporting the value of assets as of the date of appointment and movement of the disclaimed funds into the SNT.

The Court finds its own memory and understanding based on the references to disclaimer made during the initial appointment phase was that Mr. Black intended to disclaim all assets held POD to Joanne Black in Vanguard and Fidelity accounts and move the funds into the SNT for the sole benefit of Joanne Black. This understanding was created by Mr. Black's statements in his initial petition which advised the Court that Renata Black had changed the beneficiary designations on certain assets and as a result, those assets in the sum of $3 million passed outright to Joanne Black rather than into the SNT and the statements made by Mr. Black at the appointment hearing that the funds would be placed into a trust with Mr. Dain as trustee. The Court signed two orders of

6

appointment. The first Order signed December 11, 2012 specifically directs at Paragraph 6 that "Respondent's assets will be placed into a Supplemental Needs Trust for Respondent's benefit." As noted above, Respondent's assets were identified in the petitions as the sum of approximately $3 million.

The second amended order submitted by Mr. Black on January 29, 2013 was specifically not signed by the Court as it contained language referring to Renata Black's Will directing that two thirds of her estate would be contributed to a SNT for Joanne Black's benefit. This order was deliberately not signed by the Court at the time, as it did not comport with the Court's understanding of what Mr. Black intended to do once he disclaimed the funds in the Fidelity and Vanguard accounts. It was the Court's specific understanding that once Mr. Black disclaimed the funds, all of the funds would be placed into the SNT as directed by Renata Black's Will. At no time was it the Court's understanding that Mr. Black intended to divide the disclaimed funds and divert one-third of the funds into the Issue Trust. Neither the petition, amended petition nor any of the proposed orders actually state the disclaimed funds would be divided. The references given to the terms of Renata Black's will, when read together with the statements of the amounts left to the PP in the POD accounts, give the specific understanding that all of the POD account funds would be transferred into the SNT. This understanding is supported by the amended form of order submitted on March 5, 2013 which states at Paragraph 6 that Respondent's assets would be placed into a SNT for Respondent's benefit and at Paragraph 9.a. that Mr. Black had authority as conservator to disclaim the POD funds held in the Fidelity and Vanguard accounts. These two paragraphs on the order submitted and signed March 5, 2013 reflect the Court's understanding that all of Joanne Black's assets subject to the disclaimer would be placed into the SNT without division or diminution.

During trial, CAC, the GAL and Mr. Dain testified their understanding was the same as the understanding held by the Court. Through trial and review of the record, the Court finds that Bernard Black did not fulfill his duty of candor to the Court and at no time did he explain or represent his true intentions with regard to the funds held in the Vanguard and Fidelity accounts to either the Court, the GAL CAC or his co-trustee, Mr. Dain. Mr. Black's insistence that because he referenced Renata Black's Will, the SNT and Issue Trust and provided copies of those instruments his duty of candor and full disclosure were fulfilled falls far short of the mark. Mr. Black's position essentially states the Court had the primary duty to discern Mr. Black's intentions by reading the Will, SNT and Issue Trust instruments rather than having the intention fully disclosed by Mr. Black to the Court. Indeed, Mr. Black testified that the other one-third was implicitly going somewhere else. Mr. Black also admitted during his testimony that during the appointment phase he "in effect" disclosed the existence of the issue trust to the Court, thereby admitting he did not explicitly explain to the Court what the intended effect of the disclaimer would be.

7

Because Mr. Black failed to plainly and fully disclose his intentions and the intended result of the disclaimer, the Court finds the order granting authority for the disclaimer was not obtained after full disclosure. In addition, it was revealed at trial that Mr. Black failed to disclose the existence of a Roth IRA account also left to the PP at any time prior to his appointment or on the Inventory filed with the Court. The existence of the Roth IRA was revealed by the forensic accounting performed by Pamela Kerr.

*Breach of Fiduciary Duty*

Bernard Black, through his petition for appointment as conservator and the Court's orders, is a fiduciary for Joanne Black. Bernard Black also had fiduciary responsibilities to Joanne Black as the Executor of Renata Black's Will and as a co-trustee for the SNT. Bernard Black failed to disclose to the Court, GAL, CAC, Mr. Dain and Respondent that he intended to divert one-third of the POD assets into the Issue Trust which benefitted himself and his children, thereby breaching his fiduciary duties to Respondent Joanne Black. As a result, the sum of $1,511,356.00 was not transferred into the SNT. Mr. Black's breach of his fiduciary duty was the sole reason these funds were not placed into the SNT.

Mr. Black was the sole signatory on the bank accounts holding estate and trust funds. Mr. Black has attempted to shift some of the blame for his actions onto his cousin, Anthony Dain. Mr. Dain was named as co-trustee for the SNT. As noted above, Mr. Dain complained to the Court in writing and through his testimony that he was unable to obtain an accounting from Mr. Black. At trial Mr. Dain explained that once he was unable to obtain an accounting or a bank statement from Mr. Black, he declined to be added as a signatory on any of the accounts due to the concerns he had developed and for fear that his professional license would be at risk. Based on the information adduced at trial the Court finds Mr. Dain's fears were justified. The Court finds none of the actions taken by Mr. Black had anything to do with what Mr. Dain did or did not do and any accusations to the contrary are reprehensible.

The Court finds the evidence shows Renata Black had a long-standing estate plan which generally provided that two-thirds of her estate would be placed into a SNT to benefit Joanne Black and that one-third of her estate would be placed in an Issue Trust to benefit Bernard Black and his children. The Court finds this generally was the understanding of Bernard Black, his wife, Mr. Dain and Ms. Wrigley. It was Mr. Black's further understanding that funds held in the accounts at Vanguard and Fidelity did not have designated beneficiaries and would pass through Renata Black's estate upon her death and then be distributed in accordance with the estate plan as expressed in her Will. Unbeknownst to Mr. Black, Renata Black altered her estate plan prior to her death and directed that POD designations be placed on the Vanguard and Fidelity accounts, with 95% of the funds given to Joanne Black directly and 1% to each of Mr. Black's five children from his first marriage. Although not disclosed at all initially, discovery

8

confirmed at trial revealed the existence of a Roth IRA which was left POD to Joanne Black in its entirety. Mr. Black's second wife, with whom he has two children, testified that upon learning about the POD designations to accounts which previously were intended to pass through the estate and be divided two-thirds and one-third, she intended to initiate a lawsuit to recover funds since her children would not now receive an inheritance as all funding for the Issue Trust was dependent upon the monies held in the Vanguard and Fidelity accounts.

Mr. Black testified that faced with the knowledge that his wife intended to sue Renata Black's estate, of which he was executor, he sought a different resolution. Mr. Black also testified he thought there was a good argument which could be brought before the probate court to invalidate the POD designations. Rather than a straightforward request to the probate court, Mr. Black devised a plan to obtain disclaimers from his sister and each of his five older children so the funds could then be liquidated and passed through the decedent's estate as originally planned. There were no conversations with Mr. Dain about this plan. There were, however, discussions with Ms. Wrigley regarding the plan and she attempted to assist Mr. Black with obtaining a disclaimer directly from Joanne Black. Ms. Wrigley testified that although Mr. Black did not tell her how he came up with the concept of the disclaimer or what its effect would be, he assured her that he would put the funds received into the SNT with Mr. Dain as trustee, again not explaining the two-third, one-third division. Joanne Black was in a psychotic state at this time and homeless in Denver, and any attempt to have her sign a disclaimer had to be abandoned so the conservatorship case was filed in the DPC.

The Court finds Mr. Black had a clear conflict of interest regarding the funds held in the POD accounts. Mr. Black is also the Executor of the probate estate and a successor trustee for the SNT. Mr. Black and his children are beneficiaries under the Issue Trust. None of this information was disclosed to the Court, to the GAL or CAC. Based on Mr. Black's own testimony that he disclosed in the information "in effect" and that it was "implicit" displays his intention that the full facts not be plainly disclosed. Of even more concern, Mr. Black testified he deliberately chose to file the inventory and financial plan after he had already disclaimed the funds, despite the statutory requirement that the inventory reflect the PP's assets as of the date of appointment. At no time did Mr. Black disclose the entirety of the PP's estate to the Court. The Court finds the actions taken by Mr. Black based in part on his own testimony were deceptive and undertaken in bad faith.

### Civil Theft

The Court signed an Amended Order on March 5, 2012 appointing Mr. Black as Conservator for Joanne Black. As noted above, the issues regarding Mr. Black's misappropriation of the POD accounts was not identified until he filed the amended annual report on September 8, 2014. Mr. Black did not accurately represent the PP's assets on the inventory he filed July 1, 2013, as he did not

9

disclose the existence of the Roth IRA account and he only reported the Vanguard and Fidelity account balances *after* he disclaimed and divided the funds. Only upon review of the amended inventory was it realized by others that one-third of the $3 million in assets claimed on the initial petition were missing. The Court finds the Motion for Civil Theft Damages, filed by CAC on June 15, 2015 was filed well within the two year limitation period.

Review of the record and the evidence reflects all of the elements for C.R.S. 18-4-401 are met in this case. Without a doubt, Mr. Black knew the funds designated in POD accounts to Joanne Black and his children did not belong to him. Mr. Black developed a plan to divest Joanne Black and his children of the funds specifically left to them by Renata Black. To carry out that plan, Mr. Black deliberately withheld full disclosure of his intention to this Court when he sought and received permission to disclaim the funds. Mr. Black never advised this court the POD accounts at issue were left in part to his children and he never advised this Court the Issue Trust or the Roth IRA existed. The dilemma Mr. Black found himself in was never explained to any Court until these contested proceedings were held. The Court therefore finds Mr. Black knowingly obtained and exercised control over the POD account funds without authorization and by deception.

The Court finds Mr. Black intended to permanently deprive Joanne Black of one-third of the POD funds. The Court does not so find with respect to Mr. Black's children, as they apparently received their funds as beneficiaries of the Issue Trust. Joanne Black, on the other hand, has been permanently deprived of her funds. Mr. Black has knowingly used Joanne Black's POD account funds to fund the Issue Trust set up under Renata Black's estate plan and it is clear from his own testimony that he intended to and still intends to permanently deprive her of those funds. Mr. Black deliberately concealed the POD account funds by failing to fully disclose their existence and amount on the inventory due March 11, 2013 which by Colorado statute is required to declare all assets held by the PP on the date of appointment which in this case was December 11, 2012. There is no doubt that Mr. Black's actions were knowing and willful and that he knew the result of his actions would be that one-third of Joanne Black's POD funds would be diverted to himself and his children through the vehicle of the Issue Trust.

Whether Mr. Black had a cause of action in the New York probate court to modify or invalidate the POD designations is not an issue for this Court's decision. Mr. Black did not give the New York Court (or this Court either, for that matter) the opportunity to review the situation or any of the facts testified to before this Court regarding Renata Black's state of mind or her intentions. It also appears Renata Black created another Will which was not offered for probate in New York. Mr. Black never sought advice from his co-trustee Mr. Dain as to whether he would consider an agreement to divide the funds as contemplated by the original estate plan. As pointed out by Counsel for Mr. Black, this Court does not have jurisdiction to make determinations within Renata Black's estate, as that power lies with the New York Court. Mr. Black's rationalizations for his actions cannot

overcome the basic facts that he deliberately failed to fully disclose his intentions or the full facts to this Court. This Court therefore proceeds on the facts and evidence before it and finds Mr. Black has committed civil theft against Joanne Black beyond a reasonable doubt. Mr. Black had an independent legal duty to Joanne Black in a fiduciary capacity as her conservator and as co-trustee of her Special Needs Trust beyond his fiduciary duty to her as executor of Renata Black's estate. Mr. Black is not entitled to rely on his receipt of the funds, as he obtained them by deception and by extension, his children are not entitled to rely on their receipt of the funds in excess of the POD amounts given to them by Renata Black.

The Court finds by clear and convincing evidence that Renata Black intended funds be provided to Joanne Black after her death to provide for Joanne Black's welfare. Joanne Black has suffered from a debilitating mental illness for the majority of her life and is unable to work or sustain herself independently. C.R.S. 18-4-405 states the owner of funds obtained by theft may recover $200.00 or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees. The award of treble damages is not discretionary. *In re Krupka*, 317 B.R. 432 (Bankr.D.Colo. 2004).

### Damages, Costs and Attorney Fees

The Court finds significant expenses have been incurred to try this case at the expense of the Joanne Black and Renata Black estates. The Court finds Bernard Black has not made any efforts to mitigate the costs and fees incurred. The Court finds Pamela Kerr's report reflects a significant amount of work documenting Mr. Black's use of estate funds. Mr. Black chose to object to the forensic results, insisting the accounting should be based on his version of events. This position not only was inappropriate as it impeded the Court's attempts to determine the exact amount of funds which had been diverted to the Issue Trust from the POD accounts, but significantly increased the cost to the parties. Ultimately, on the date of the surcharge hearing and using the information provided by Ms. Kerr, the parties agreed the misappropriated funds from the Vanguard and Fidelity accounts totaled $1,010,688.00 and the funds misappropriated from the Roth IRA totaled $500,558.00. The parties further agreed that 8% interest was due from the date of transfer.

Ms. Kerr's accounting shows that Mr. Black transferred funds into an excessive number of different accounts, which can only be likened to a shell game. It took an extraordinary effort by Ms. Kerr to trace where funds were placed and the expenses paid by the funds. This is best shown by Summary Exhibit D, admitted into evidence on September 8, 2015. This exhibit shows 25 different accounts were created to hold funds related to this case, encompassing Renata Black's original accounts at Vanguard and Fidelity and accounts opened by Mr. Black as Executor, Trustee and conservator. The Court finds 15 of these accounts appear

to be completely unnecessary. The Court further finds Mr. Black caused a new trust to be created for Joanne Black at a significant cost to Joanne Black's estate which also appears to be completely unnecessary. The evidence provided to the Court indicates Mr. Black failed to account for tax consequences when he caused the second SNT to be created and manipulated funds and transactions between Joanne Black's conservatorship estate and her trust and Renata Black's estate, so that Joanne Black would bear the brunt of any tax ramifications. As a result, tax consequences to Renata Black's estate were minimized and the benefit passed on to Bernard Black and his children to Joanne Black's detriment.

C.R.S. 15-10-605(1) states that if the court determines any proceedings were brought, defended or filed in bad faith, the court may assess the fees and costs, including reasonable attorney fees incurred against the estate, party, person or entity that brought or defended the proceedings in bad faith. C.R.S. 15-10-605(4) states that a fiduciary who is unsuccessful in defending the fiduciary's conduct in a proceeding alleging breach of fiduciary duty shall not recover the fees or costs of that defense as the court deems equitable.

The Court finds Bernard Black has breached his fiduciary duties and has defended this action in bad faith for the reasons discussed above. The Court finds Bernard Black should personally bear the cost for these proceedings, to include but not be limited to the full amount of attorney fees and costs for the Guardian *ad Litem* Gayle Young, Court Appointed Counsel Lisa DiPonio and Forensic Accountant Pamela Kerr. Invoices have been submitted and requests for further hearing as to the imposition of fees and costs or the reasonableness of the fees and costs charged must be filed with the Court within 14 days from the date of this order. The Court finds from the record before it that Joanne Black and her estate have derived a compensable benefit from the efforts of the GAL, CAC, Pamela Kerr and Anthony Dain, noting the amount at issue was a full one-third of the total estate left to Joanne Black by her mother. The Court finds Bernard Black should fully reimburse Joanne Black's estate for the amounts he spent creating a second trust.

IT IS THEREFORE ORDERED:

1. Bernard Black has breached his fiduciary duty as conservator for his sister Joanne Black and is REMOVED as conservator. Any Letters issued to Bernard Black are hereby REVOKED. The word revoked shall be written upon the face of the Letters.

2. Bernard Black is SURCHARGED the sum of $1,511,356.00 representing the full amount of disclaimed funds. Judgment enters in the sum of $1,511,356.00 against Bernard Black and in favor of Joanne Black. Interest shall accrue at the statutory rate of 8% per annum effective from the date the funds were transferred from Renata Black's Vanguard,

12



Fidelity and Roth IRA accounts. The judgment entered this date is based upon breach of fiduciary duties and is not dischargeable in bankruptcy.

3. All costs, fees and attorney fees incurred to prosecute this matter shall be paid by and chargeable to Bernard Black, including GAL fees and fees for Pamela Kerr's accounting and services. Any such fees and costs, including attorney fees paid by Joanne Black or her estate shall be reimbursed by Bernard Black with interest.

4. The Motion Requesting the Court to Consider Civil Theft Damages is granted. Treble damages based in civil theft are awarded to Joanne Black in the sum of $4,534,068.00 and judgment is entered for this amount against Bernard Black and in favor of Joanne Black. Interest shall accrue at the statutory rate of 8% per annum from the date of this Order. This judgment is based in civil theft and is not dischargeable in bankruptcy.

5. This Court recommends that Bernard Black not be appointed as a fiduciary for his sister Joanne Black in any capacity and especially not in any capacity involving Joanne Black's funds. The Court recommends Bernard Black be removed as the Executor of Renata Black's estate and that his actions as Executor be closely reviewed and examined. The Court recommends Mr. Black be removed as a trustee or co-trustee for any trust of which Joanne Black is a beneficiary.

6. The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court. Ms. Wrigley, by virtue of her special relationship with Joanne Black and her training, is especially suited to be appointed as guardian over the person of Joanne Black. Mr. Dain was fully justified in his decision to not be added as a signatory to accounts set up by Mr. Black. Mr. Dain is fully qualified to continue to act as a sole trustee or as a co-trustee for any trust naming Joanne Black as a beneficiary.

7. The Court recommends a professional fiduciary be appointed to act as Joanne Black's conservator or guardian of her property in New York State.

8. The Special Conservator is granted full authority to act as Conservator for Joanne Black until a conservator or guardian of the property is appointed by the Court in New York State. The Special Conservator's authority is unlimited and includes the authority to pay outstanding fees and costs to the professionals identified in this action pending reimbursement or collection from Bernard Black until the time these duties are transferred to the permanent conservator or guardian of the property.

9. All funds held by Counsel for Bernard Black shall be immediately paid to the Special Conservator to defray the costs of these proceedings and pay the GAL, CAC, Special Conservator and Pamela Kerr's fees if they have not already been paid.

10. This Court retains such jurisdiction over this action as is necessary while the protective proceeding remains pending in New York State and until the Court in New York makes a determination of who will serve as guardian and conservator or guardian of the property for Joanne Black. Because of the judgments entered, this Court retains jurisdiction until the judgments are paid in full. Retention of jurisdiction with regard to the judgments will not restrict, impede or prevent action taken by a fiduciary appointed by a Court in New York State to collect on any such judgment or take any actions as are necessary to fully and finally resolve any financial issues between Bernard Black and Joanne Black. It is this Court's intention that any jurisdiction retained run concurrently with the Court in New York.

11. It has been shown that Bernard Black paid funds to his attorneys after this Court entered its orders freezing the accounts. Bernard Black paid a portion of those funds back in the sum of $115,000.00 which were held in his counsel's trust account and were previously ordered to be paid over to the Special Conservator. The Court must find, however, that the motion for contempt citation was not filed in strict compliance with C.R.C.P. 107, in that an order for issuance of a citation and a citation were not filed with the court. The Court therefore declined to issue a citation. C.R.CP. 107 requires personal service upon a contemnor and without strict compliance of these requirements, the Court does not obtain jurisdiction to impose a fine or jail sentence. The Court does, however, retain jurisdiction to determine the full amount of funds withdrawn by Mr. Black in contravention of the Court's order freezing accounts. The Court will therefore entertain further motion to determine the amount which remains due, if any, to be repaid by Mr. Black as to his failure to abide by this order, including the entry of a judgment.

12. The Court will entertain further motion to determine the amounts to be repaid by Mr. Black for causing an unnecessary trust to be set up for Joanne Black using her conservatorship estate funds, including the entry of a judgment.

14



13. This Court remains extremely concerned that its orders and intentions will be misrepresented by Bernard Black and Counsel appearing on his behalf to New York Courts as has apparently been done previously. This Court hopes that any questions which may arise as a result of this Order or any clarifications deemed necessary will be quickly brought to this Court's attention for resolution.

DONE this 28th day of SEPTEMBER, 2015.

BY THE COURT:

*Elizabeth D. Leith*

Elizabeth D. Leith
JUDGE
Denver Probate Court

PROBATE COURT
City & County of Denver, Colo
Certified to be full, true and correct
copy of the original in my custody.

MAR 2 4 2016

By _____
Deputy Clerk

15